J-S07017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2512 EDA 2022 |

Appeal from the Order Entered September 14, 2022,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s): CP-51-DP-0000806-2018.

| | | |
|---|---|---|
| IN THE INTEREST OF: C.C.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2513 EDA 2022 |

Appeal from the Decree Entered September 14, 2022,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s): CP-51-AP-0000758-2021.

| | | |
|---|---|---|
| IN THE INTEREST OF: C.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2514 EDA 2022 |

Appeal from the Order Entered September 14, 2022,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s): CP-51-DP-0001237-2019.

| | | |
|---|---|---|
| IN THE INTEREST OF: C.T.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2515 EDA 2022 |

Appeal from the Decree Entered September 14, 2022,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s): CP-51-AP-0000759-2021.

BEFORE: DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 17, 2023**

M.B. (Mother) appeals the decrees issued by the Philadelphia County Court of Common Pleas, which terminated her rights to her five-year-old son, C.C.P., and her four-year-old daughter, C.T.P. (the Children), pursuant to the Adoption Act. **See** 25 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), (b). Mother also challenges the trial court's decision to change the goal of the Children's respective dependency cases, from reunification to adoption.[1] After review, we affirm the termination decrees and dismiss Mother's goal change appeals as moot.

---

[1] The trial court also terminated the rights of T.P. (Father) and likewise issued goal change orders. **See** 2460, 2461, 2462, and 2463 EDA 2022. Father's appeal is separately listed before this panel.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court thoroughly set forth the following factual and procedural history:

[…] DHS first became aware of this family on February 27, 2016, when it received a general protective services (GPS) report indicating concerns for the safety of the Children's older sibling and parent's drug activity. The report indicated concerns for the older sibling's hygiene and food intake, Mother's use and abuse of Xanax and Percocet, and the family's living conditions. Based on this report, Community Umbrella Agency (CUA) Tabor Community Partner services were implemented in-home for the family until October 16, 2017, when it was determined that the family was stabilized.

[In March 2018], following the birth of C.C.P., DHS received a GPS report which alleged Mother tested positive for benzodiazepine, marijuana and opiates at the birth of C.C.P. C.C.P. also tested positive for benzodiazepine and marijuana at birth. Mother was not prescribed the medication and admitted to taking Xanax, Percocet and marijuana every other day. Mother also admitted that she last used drugs […] two days prior to the birth of C.C.P. When Father was present at the hospital, the room smelled of marijuana and he appeared under the influence of drugs and/or alcohol. Father was walking unsteadily, falling, slurring his words, and exhibiting inappropriate behavior. Following the birth of C.C.P., Father and Mother continued to visit the hospital under the influence of drugs and neither [was] engaged in drug and alcohol treatment. On April 8, 2018, DHS obtained an order of protective custody (OPC) for C.C.P. and placed him into the care of [Maternal Grandmother]. FN3

    FN3: C.C.P. was placed together with his older sibling at the [Maternal Grandmother's] home.

The adjudicatory hearing was held on April 19, 2018 whereby this court adjudicated C.C.P. dependent based on [the] present inability of parents to provide proper parental care and control, and C.C.P. was fully committed to DHS.

[In July 2019, C.T.P. was born.] [On the day of the birth], DHS received another GPS report stating that Mother had given birth and tested positive for benzodiazepines, marijuana, and oxycodone. C.T.P. tested negative for those substances, however, C.T.P. was showing withdrawal symptoms which led to the hospital keeping C.T.P. for observations. Mother and Father appeared to be under the influence of drugs when they arrived at the hospital. They were unable to speak coherently, and Mother did not recall the date or year. A few days later, DHS spoke with Maternal Grandmother who stated that Mother was active in her drug use and not receiving treatment. [In July 2019], DHS obtained an OPC, and placed C.T.P. in care with [Maternal Grandmother]. The adjudicatory hearing was held on August 22, 2019 whereby this court adjudicated C.T.P. dependent based on the present inability of parents to provide parental care and control, and C.T.P. was fully committed to DHS.

Throughout the life of this case, Mother's single case plan objectives have remained essentially the same. Mother was referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen, an assessment, monitoring, and three random drug screens. She was also ordered to: 1) attend a substance abuse treatment program; 2) attend Achieving Reunification Center ("ARC") or another agency for parenting and housing; 3) attend weekly supervised visits with Children at the agency; and 4) attend a domestic violence counseling program. FN4

> FN 4: Domestic violence counseling was added as an objective after Mother and Father engaged in a fight during a visit.

At the relevant goal change [and termination] hearing, Mother was not present. FN5

FN 5: As to service, DHS Solicitor, Jim Kelly, stated that Mother was present at previous listings, and also good service was found several listings ago. He further stated that the proceeding had been continued a number of times for the same reason.

The former CUA case manager supervisor, Tenessa Overton, testified that she had been the supervisor on this case from March of 2018 until January of 2020. She stated Mother's

compliance throughout the life of this case has been consistently minimal. Ms. Overton testified that Mother only provided one out of the three required CEU screens in November of 2019. She stated that the screen was positive for marijuana, amphetamines, and benzos. As for Mother's substance abuse treatment, CUA case Manager, Sakeena Sidq, who was assigned this case in January of 2022, testified that Mother has never completed a drug and alcohol treatment program. Ms. Overton testified that after C.C.P. was born, Mother started outpatient treatment at Caring Together and Guadenzia. She stated that staff at Caring Together provided her with oral verification as to Mother's drug screens which were all reported as positive.

Ms. Sidq testified that Mother's intake date at Caring Together was about three years ago on September 12, 2019. Ms. Sidq also received progress reports and drug screens from Caring Together for Mother. She testified that over the past seven months Mother provided Caring Together with two drug screens, one in December of 2021 and the other in June of 2022. Ms. Sidq stated both drug screens came back positive for marijuana and benzos, but Mother currently has a prescription for benzos. She stated Mother completed her dual diagnosis screening at Caring Together and receives outpatient therapy through them. As for Mother's consistency at Caring Together, Ms. Sidq testified that Mother was an active participant during therapy, however, she needs to be more consistent by attending sessions. Since the last court date on June 23, 2022, Mother attended only four of her individual sessions and three psych appointments. Ms. Sidq testified that Mother told the program that she missed the sessions due to work, however, she has not provided any work documents to Caring Together or CUA.

Over the life of this case, Mother's housing situation has remained inconsistent and inappropriate for Children. Ms. Overton testified that Mother was referred to ARC for housing and parenting. She stated that Mother never attended, and her case was closed out. Ms. Overton also stated Mother was previously living with a family member, but the agency could not verify if Mother really lived there. Ms. Sidq further testified that Mother does not have housing, but Mother is in the process of obtaining housing. Ms. Sidq further stated Mother never provided her with verification of

an address that she could do a walkthrough. As lack of verified housing has persisted throughout the case, Ms. Overton testified that Mother was transient. Additionally, Mother has been unable to provide Ms. Overton or Ms. Sidq verified proof of employment. Ms. Sidq stated Mother reported about four different jobs but has not provided any documentation confirming employment.

With regard to Mother's visitation objective, Ms. Overton testified that visits never progressed passed supervised at the agency. She stated that there were some domestic violence issues with the parents during a visit resulting in the separation of their visits. [Footnote omitted]. Ms. Overton and Ms. Sidq testified that Mother has not provided them with a certificate of completion for domestic violence. Ms. Overton further testified that Mother was inconsistent with her visits, but she would visit at least once every year. Ms. Sidq, who has been on the case since January of 2022, testified that Mother has only missed two visits since the last court date in June of 2022.

The CUA case manager also testified about the relationship and bond that the Children share with their pre-adoptive families. Ms. Sidq testified that C.C.P. has been in care now for his whole life for four and a half years since birth. C.C.P. looks at his Maternal Aunt as his mother and her husband as a father. C.T.P. has been in care for three years, since birth as well. Ms. Sidq stated that C.T.P. has been in her current placement for over 18 months. FN7.

> FN 7: C.T.P. has been in her current placement since March of 2021 with Paternal Cousin.

Ms. Sidq testified that C.T.P. looks to her Paternal Cousin as a mother. She further stated that C.T.P. has some attachment issues from being moved and not having a consistent caregiver or her biological parents since birth. The current kinship parents are willing to be adoptive resources for the Children. Additionally, Ms. Sidq testified that the Children would not suffer any harm from terminating Mother's and Father's parental rights and that she believes it is in the best interest of the Children to change the goal to adoption.

At the conclusion of the hearing, the Court issued a decree involuntarily terminating Mother's parental rights and

changing the permanency goal to adoption pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and finding in accordance with 23 Pa.C.S.A. § 2511(b) that such termination best serves the developmental, physical, and emotional needs and welfare of the [Children].

Trial Court Opinion (T.C.O.), 12/14/22, at 1-6 (citations to the record and some footnotes omitted) (style adjusted).

Mother timely filed this appeal. She presents the following issues for our review.

1. Whether the trial court committed reversible error when the trial court changed the goal to adoption and involuntarily terminated Mother's parental rights, where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8).

2. Whether the trial court committed reversible error when the trial court changed the goal to adoption without giving primary consideration to the effect that the adoption would have on the developmental, physical and emotional needs of the Children as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b).

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her Children.

4. Whether the trial court abused its discretion and erred as a matter of law in changing the permanency goal to adoption from reunification, as there was not competent evidence presented that it was in the best interests of the Children.

Mother's Brief at 8.

We first address whether the court erred when it concluded that termination was warranted under Section 2511(a), and then (b). Thereafter, we address whether Mother's appeals from the goal change order are moot, and if not, whether they have merit.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate could should not search the record for contrary conclusions or substitute its judgment for that of the trial court.").

The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." ***In re P.Z.***, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

***In re C.M.K.***, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting ***Matter of Adoption Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

Critically, we may uphold a termination decision if any proper basis exists for the result reached. ***C.S.***, 761 A.2d at 1201. We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well

as Section 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Therefore, we review Mother's first appellate issue insofar as it concerns the termination of her rights under Section 2511(a)(2), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> […]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re C.M.K.***, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010). We note that the grounds for termination are not limited to affirmative misconduct like abuse but concern parental incapacity that cannot be remedied. ***See id.***

Instantly, the trial court determined that DHS met its burden under Section 2511(a)(2) for the following reasons:

> The evidence established that "incapacity" and "refusal" under Section 2511(a)(2) existed given that Mother failed to demonstrate a concreted desire or ability to care for the Children. Mother has failed to complete her single case plan objectives throughout the life of this case. Any compliance on Mother's part has come recently after the petitions were filed. Despite having had four years to do so, Mother has failed to obtain employment or appropriate housing. She has also failed to complete a parenting program, a domestic violence program, and a drug and alcohol program. As for visits, prior to June of 2022, Mother would only visit the Children at least once a year. Additionally, Mother continues to test positive for non-prescribed drugs and remains inconsistent with her individual therapy and psych appointments. This court found that Mother's failure to comply with her single case plan objectives and obtain housing and employment for the Children has left the Children without essential parental care, and the cause of such neglect, refusal, and continued incapacity will not be remedied by Mother.

T.C.O. at 11-12 (citations to the record omitted) (style adjusted).

On appeal, Mother argues that the trial court's decision was erroneous, because Mother had been active in her visitation and had been working on her single case plan objectives. Mother also notes that she has been prescribed benzodiazepines, and thus a positive test for this drug should not count against her. Mother concludes that the court's decision was not supported by competent evidence. *See* Mother's Brief at 24-25.

In addressing these claims, we reiterate that it is not the function of this Court to search the record for evidence that would support a contrary result.

***See S.K.L.R.***, 265 A.3d at 1124.  Mother's claims ask us to do just that.  She asks us to view the record in a light most favorable to her.  Mother notes that she eventually obtained a valid prescription for benzodiazepines, that her most recent screen did not show opiate use.  Mother also cites her recent participation in her single case plan.  As an appellate court, we employ a highly-deferential standard in termination matters.  "Not only are our trial judges observing the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and the best interests of the individual child involved[.]" ***Id.*** (quoting ***R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010)).  Our role is simply to review the record for an abuse of discretion and for whether the evidence supports the trial court's conclusions. ***Id.***

When doing so, we observe that the Children have been without parental care for four years.  During that time, Mother has been unable to make progress with her single case plan objectives.  Her lack of progress demonstrates an inability or a refusal to take the necessary steps toward reunification.  For instance, although Mother was an active participant in therapy when she went, she did not attend regular sessions.  In her most recent screen, the only illicit drug Mother tested positive for was marijuana.[2] While this exemplified progress, Mother's refusal or inability to commit to drug and alcohol treatment prevented the trial court from increasing Mother's

---

[2] Evidently, Mother does not have a medical marijuana card.

visitation with the Children. Indeed, Mother visited infrequently, and she never progressed to unsupervised visits. Mother has struggled to find employment and suitable housing. In her Brief, Mother makes arguments as to why each of these unfulfilled goals does not warrant termination. But it is the totality of these unfulfilled goals, over the course of four years, that we find constitutes sufficient evidence under Section 2511(a)(2). Mother's first issue merits no relief.

Having discerned no error or abuse of discretion as to the first prong of the bifurcated termination analysis, we next address the trial court's findings under Section 2511(b), which Mother challenges in her second appellate issue.

That Section provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has explained further:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort,

- 13 -

> security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). Moreover, the court is not required to use expert testimony to resolve the bond analysis. *In re Z.P.*, 994 A.2d 1108, 1121 (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008)).

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Returning to the instant matter, the trial court set forth its findings under Section 2511(b) as follows:

> [T]his court determined that the Children would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony that the Children would not suffer harm if Mother's parental rights were terminated and that the Children are significantly bonded with their kinship parents. […] Additionally, Mother failed to offer any evidence establishing the existence of a parent-child bond. The testimony demonstrated that the Children's primary bond is with their pre-adoptive resources. Additionally, the testimony demonstrated that the Children's kinship resources meet all of their general needs and emotional needs. In determining that termination would best serve the needs and welfare of the Children, this Court considered that Mother has not been able to meet the Children's emotional, physical, and developmental needs for over three years prior to the termination hearing.

T.C.O. at 15 (citations to the record omitted).

On appeal, Mother argues that there was no evidence, one way or another, whether a bond existed. *See* Mother's Brief at 28. Mother's argument merits no relief. We reiterate that the lack of evidence of a bond between a parent and child, allows a trial court to reasonably infer that no bond exists. *K.Z.S.*, 946 A.2d at 762-63. Upon review of the record, such an inference was reasonable in this case.

Moreover, the bonding analysis is just one as aspect of the Section 2511(b) analysis. Mother has been unable to meet the Children's needs and welfare for years. They have lived outside of her care for most of their lives. As a result, their primary attachments are to their respective pre-adoptive

- 15 -

kinship parents.  For these reasons, we discern no err or abuse of discretion with the court's determination that DHS met its burden under Section 2511(b).  Mother's second appellate issue is without merit.

Having concluded that the trial court properly terminated Mother's rights to the Children, we turn our focus to Mother's remaining issues.  These claims allege the trial court erred when it changed the goals of the dependency cases from reunification to adoption.  Because we have concluded that termination was warranted, we dismiss these challenges as moot.  ***See Interest of D.R.W.***, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

Decrees affirmed.  Appeals concerning the goal change orders dismissed.

Judge King joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/17/2023